JANVIER, Judge.
This is a suit for workmen’s compensation. Plaintiff was a sandwich maker in the employ of Felix’s, Inc., which operates a restaurant on Iberville Street, in New Orleans. She slipped and fell to the floor, sustained injury, and brought this suit against her employer and its compensation insurer, United States Fire Insurance Company. She prayed for judgment based on total, permanent disability, for penalties of 12% and for attorney’s fees on the contention that compensation had been arbitrarily and capriciously withheld.
■ The defendants . answered, denying liability primarily on the ground that the business in which the employer is engaged is not hazardous and that the work of the plaintiff-employee was not hazardous, and on the further ground that no disability from the accident continued beyond the period during which compensation was paid.
From a judgment dismissing the suit plaintiff has appealed.
It is conceded that the accident occurred in the course of and arose out of the employment. Counsel for plaintiff, sensing the possibility of a holding that the employment of plaintiff was not hazardous, has, in the alternative, contended that the insurer is nevertheless liable because of the effect of Act 495 of 1958, which provides that, where there is insurance, the insurer is estopped to deny liability on the ground that the employment was not hazardous. On behalf of the defendant-insurer this contention is met by the argument that the statute is not retroactive and that, since the policy of insurance was issued and the accident occurred before the effective date of the statute, it has no effect in the case. We must first consider this contention for if that statute is retroactive, then the nature of the business of the employer and tire particular occupation of the plaintiff are of no importance since there would be compensation liability in the insurer in any event if there is disability.
The accident occurred on February 7, 1958; the statute of 1958 went into effect on July 30, 1958, which was almost five months after the occurrence of the accident and was even longer after the issuance of the policy. Whether in such situation that particular statute could be given retroactive effect was given consideration by the Court of Appeal for the Second Circuit in Hymel v. Employers Liability Assurance Corporation, Ltd., of Great Britain, 113 So.2d 481, 484. That Court cited many authorities, and, giving reasons which meet with our entire approval, held that the *93 statute could not be given retroactive effect :
“ * * * Act 495 of 1958 imposes upon an insurer of employers liability for compensation irrespective of the hazardous or non-hazardous work of the employee. It is clear, therefore, that should retroactive effect be given to the provisions of the 1958 act in this case, the statute would increase the pecuniary liability of the insurer beyond that which existed at the time of the confection of the contract. Under such a ruling the statute would impair the obligation of the contract as written.
“LSA-C.C. Art. 8, declares:
“ ‘A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts.’
“The language of Act 495 of 1958 clearly shows the Legislature did not intend the statute to be retroactive * * ”
On the question of what statutes may be given retroactive effect, see, also, Talbot v. Trinity Universal Ins. Co., La.App., 99 So.2d 811, and Honeycutt v. National Auto & Cas. Ins. Co., La.App., 41 So.2d 119.
Our conclusion is that that statute has no effect here and that, unless the nature of the work in which plaintiff was engaged was hazardous within the contemplation of LSA-R.S. 23:1021 et seq., there can be no recovery in compensation.
That ordinarily the business of conducting a restaurant is not within the contemplation of the statute has been many times held, notably in Atkins v. Holsum Cafeteria, La.App., 159 So. 758, 160 So. 655; Richardson v. American Employers’ Ins. Co., La.App., 31 So.2d 527; Claiborne v. Smith, La.App., 2 So.2d 714, and Rauk v. Clarke, La.App., 91 So.2d 47.
Counsel for plaintiff have vehemently criticized the decision of this Court, in the Atkins case in which we said that the business of operating a restaurant is-not hazardous per se and in which we also-said that ordinarily the kitchen of a restaurant is no more hazardous than is a. domestic kitchen. Counsel also complain bitterly of those other cited decisions. A mere reading of the statute itself shows-that the operation of a restaurant is not one of those businesses which are especially designated and characterized as hazardous and are expressly brought within the coverage of the statute. Thus, if any particular restaurant is to be brought within the contemplation of the statute, it must be as the result, and only as the result, of a showing that in • that restaurant there are features which bring it within the rather broad blanket provisions which in the statute follow the express list of hazardous businesses. In other words, does the business of this particular restaurant, though it is not expressly and by name brought within the coverage of the statute, bring" it within the protection afforded to certain kinds of work regardless of whether the business in which the work is done is-especially and expressly "named in the-statute ? Those blanket provisions to which, counsel for plaintiff point are:
1. “The construction, installation, operation, alteration, removal or repairs of wires, cables, switchboards or apparatus charged with electrical current.”
2. “Any occupation entailing the manufacture, transportation, care of, use of, or regular proximity to dangerous quantities of gunpowder, dynamite, nitroglycerin and other like dangerous explosives.”
3. “The installation, repair, erection, removal or operation of boilers, furnaces, engines and other forms of machinery.” (LSA-R.S. 23:1035)
The principal occupation of plaintiff was-the making of sandwiches. In this work *94 she says that the only tool or appliance which she was required to use was a carving knife. She was at times called on to assist the cook by putting material into a fry-o-lator, or by putting material on the steam table, or removing food from it. The fry-o-lator was merely a large vat of frying oil containing about five gallons of cooking oil. In some parts of the record it is indicated that there may have been as much as ten gallons of oil in it at times. Asked to describe a fry-o-lator, Louis Ro-tonti, the manager and part owner of defendant corporation, said: “ * * * it is a deep-fat fryer. It is thermostatically controlled, I mean when you place cold objects in there, it ignites the burner, the grease gets warm and cooks the food.” He added: “It is just a large model of what your wife probably uses at home.”
The steam table was merely a large metal plate heated by gas on which food was kept hot for service to customers. Plaintiff said that her connection with the steam table consisted only of setting it up. She merely put rice, gumbo, soup, oysters, etc., on the table. She said that she “didn’t operate it or turn it on.”
There was á gas bread toaster which could be used as a broiler. All that plaintiff had to do was to put slices of bread in this under the flame and remove them from it.
Although plaintiff, in her petition, alleged that she was required to use a slicing machine, in her testimony she admitted that she had nothing whatever to do with this machine. It was in a different part of the establishment altogether. She added: “I didn’t have anything to do with that * * *. I didn’t have to go in there.”
Counsel for plaintiff argue that plaintiff was within the protection of the act (LSA-R.S. 23 :1035) because she was required to come into “contact with apparatus charged with electrical current,” because she was engaged in the operation of machinery and because some of the equipment in the kitchen was operated with gas which is a dangerous explosive as is gunpowder, dynamite and nitroglycerin. We do not think that the evidence indicates that she was required to do any of those things suggested by counsel. In fact, we do not find in this establishment anything which would bring it within any of those categories set forth in the act and upon which plaintiff relies.
In Atkins v. Holsum Cafeteria, Inc., supra [159 So. 760], we said:
“ * * * We doubt very much whether kitchen ranges, dishwashing machines, and the other devices employed in the kitchen of a restaurant may be classed with ‘boilers, furnaces and engines’ within the meaning of the section of the act relied on, but assuming that they may be so classified, the most favorable view that can be taken of the matter from the plaintiff’s standpoint, and assuming, therefore, that the exception of no cause of action was properly overruled, and considering the merits of the case, we are of the opinion that plaintiff cannot recover for the reasons given in Foret v. Paul Zibilich Co., Inc., 18 La.App. 363, 368, 137 So. 366, where we held that the particular machinery used in the defendant’s business was insufficient to stamp the employer’s occupation as hazardous. * * * ”
In Claiborne v. Smith, supra [2 So.2d 715] we found “that such machinery as was employed in the establishment was similar to that which was employed by the defendant in the matter of Atkins v. Holsum Cafeteria, Inc.” It was conceded that the kitchen was equipped “with a gas stove, or range, ice box and other conveniences used in the modern home.”
In Rauk v. Clarke, supra [91 So.2d 48] it was shown that the defendant was engaged “in operating a rather small restaurant in the City of Baton Rouge, the equipment of which consisted of a gas stove, one or more refrigerators, a food freezer, a steam table, to keep food warm, ice cream cooler and a coffee urn.”
*95 In Harrington v. Franklin’s Stores Corp. of New Iberia, 55 So.2d 647, 648, which did not involve kitchen appliances, the Court of Appeal for the First Circuit held that the plaintiff was not engaged in an employment contemplated by the statute. She was employed in a store and “her principal duties consisted of general cleaning and the pressing of merchandise used for display in the window with an electrically powered steam iron. In cleaning the store she used an electrically powered vacuum cleaner. * * * ”
As a result of the reasoning in all of those decisions we feel that plaintiff was not within the protection of our compensation statutes and that for this reason the judgment dismissing the suit was proper.
Accordingly the judgment appealed from is affirmed at the cost of appellant.
Affirmed.
REGAN, J., absent takes no part.