TATE, Justice.
The plaintiff Robbins was injured while working for a veterinary hospital. The trial court awarded compensation for the disability (five weeks at $35.75 per week) and medical expenses ($519.20) resulting from the work-injury.
The court of appeal reversed and dismissed the suit. 299 So.2d 446 (La.App. 2d Cir. 1974). It found no compensation due, because the compensation statute does not classify the plaintiff’s particular employment as hazardous (although in fact it is).
We granted certiorari, 302 So.2d 305 (La.1974), because of our doubt, reinforced by the strong dissent in the court of appeal, that the majority’s interpretation of the compensation statute was realistic and sound in denying compensation benefits to an employee injured while working in an occupation which in fact is hazardous.
(1)
The plaintiff was employed as an assistant to the veterinarians operating a veterinary hospital. We find supported by the record the trial court’s finding that his employment was hazardous beyond the ordinary risks of employment because of the abnormal or uiidue risk of being bitten, scratched, or clawed by the animals with which he regularly worked, as well as the risk of contracting rabies in the course of such work.
The plaintiff was injured while lifting a heavy dog in such work, i. e., in performing the non-hazardous portion of his duties. Nevertheless, if employment in the occupation is covered by our workmen’s compensation act as hazardous, an employee sustaining a disabling injury while performing a non-hazardous feature of his employer’s business is entitled to compensation. Fontenot v. J. Weingarten, Inc., 259 La. 217, 249 So.2d 886 (1971); Luce v. New Hotel Monteleone, Inc., 234 La. 1075, 102 So.2d 461 (1958); Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303 (1924) ; Malone, Louisiana Workmen’s Compensation, Section 101 (1951).
(2)
In holding the plaintiff’s employment non-hazardous and thus not covered by the compensation act, the majority of the court of appeal in an excellently reasoned decision principally relied upon Fields v. General Casualty Co. of America, 216 La. 940, 45 So.2d 85 (1950), some dicta in our Fontenot decision cited above, and upon numerous court of appeal decisions, most of which were decided during the 1930’s. These decisions are based upon an interpretation of La.R.S. 23:1035 (1950), a re-enactment of the original of such provision found in Act 20 of 1914, our original compensation act.
Section 1035, the cited enactment, is set forth in full as Appendix “A” to this *690 opinion. The defendants essentially contend that the second paragraph’s enumeration of hazardous businesses and activities is exclusive for purposes of statutory compensation coverage. The plaintiff denies that the hazardous nature of employment, for workmen’s compensation purposes, is exclusively determined by reference to this paragraph of the section. He contends that, by the third paragraph, the section authorizes the courts to determine that trades, businesses, occupations or work additional to those enumerated are hazardous and thus covered by our workmen’s compensation law.
(3)
By Section 1035, employees of private businesses which are hazardous[1] in nature are mandatorily covered by the compensation act.[2]
The second paragraph of the section first provides that compensation coverage is afforded to certain “hazardous trades, businesses and occupations” specifically described by a lengthy enumeration. Then, the paragraph attempts additionally to classify other businesses in terms of hazardous characteristics (electricity, construction work, explosives, boilers, etc.), without reference to the specific kind of business involved. See also Malone, Section 92.
The occupation in which the present plaintiff was injured is neither one of those businesses specifically described nor is it affected with any of the hazardous characteristics specifically set forth by this second paragraph. Based on this circumstance and the jurisprudence it cited as interpreting the statute to such effect, the majority of the court of appeal held that, no matter how hazardous in fact the plaintiff’s employment, it is not covered by the Louisiana workmen’s compensation act since not specifically described or classified by the statute as hazardous. This conclusion is in general accord with the prior jurisprudence.
(4)
The plaintiff, however, relies upon the third and concluding paragraph of 1035. He relies on the first sentence of this paragraph, which provides: “If there be or arise any hazardous trade, business or occupation or work other than those here-inabove enumerated, it shall come under the provisions of this Chapter.”[3] (Italics ours.)
 We agree with the trial judge and the dissenting intermediate judge that the quoted legislative provision unambiguously provides for mandatory (“shall’’) coverage of “any hazardous trade, business or occupation or work other than those. . . . enumerated” by the preceding or second paragraph. This unambiguous intent is even more clearly demonstrated by refer *691 ence to Act 20 of 1914, which in enacting the original compensation act set forth the specified hazardous businesses in Section 2 (now the first and second paragraphs of 1035), and in an entirely separate and independent classification set forth as Section 3 (the present third paragraph verbatim) the provision that additionally subject to the compensation act were other hazardous employments existing or to arise in the future.
According to the concurring opinion in this court in Fontenot v. J. Weingarten, Inc., cited above, at 249 So.2d 891-92, the meaning of the provision is that: “ * * * [T]he court must declare in any case, when warranted under the facts, that a trade or occupation is hazardous and is included under R.S. 23:1035, and that a holding is applicable to the case at issue and all others of a similar nature. The Legislature has clearly mandated the courts to classify, when necessary, new occupations as hazardous.”
This concurring opinion also concluded, 249 So.2d 892-93:
“R.S. 23:1035 was adopted in 1914 and has not been changed since that time. The Legislature intended that the courts of this state supply the necessary interpretation to make the Workmen’s Compensation Act applicable to present times. Sixty years after the passage of that particular section, we are still applying definitions which were used by the Legislature to correct ills then apparent. The Legislature was trying to provide some financial assistance to the employees who it believed in those times were most exposed to harm because of the nature of the business in which they were employed. While operation of motor vehicles for hire is not a named hazardous occupation, certainly the Legislature of 1914, if it were possible, and our present Legislature would join us in stating that it is an occupation far more hazardous than chimney-sweeping, which is a named hazardous occupation. * * *
“As previously noted, hazardous features of employment, hazardous work, are not defined by the statute. Rather than be straitjacketed and misled by resorting to an inapplicable section of the statute for definition of hazardous activities, we should be realistic and include hazard in fact. . . . We cannot wrap ourselves in the cocoon of R.S. 23:1035 and declare that we are bound to define hazardous duties under the terminology there found [in the second paragraph] . * * * ”
To reiterate, the plaintiff relies upon the first sentence of 1035’s third paragraph.[4] Reading the sentence as a whole, we note that the 1914 legislature mandated that workmen’s compensation “shall” apply to “any hazardous trade, business or occupation or work”, whether this classification of business then existed (“If there be”) or whether it came into existence in the future (“or [if there] arise”).
We conclude, therefore, that the concurring opinion in Fontenot correctly ascribed the legislative intent of the sentence: The legislature mandated that compensation coverage not only be mandatory for employments specified as hazardous by the 1914 enumeration, but also for those others which are in fact hazardous, including not only those employments then (in 1914) hazardous but also those to arise in the future which in fact are hazardous.
(5)
We are re-enforced in this conclusion by our judicial interpretations broadly interpreting the “hazardous” characteristics specifically enumerated by the act. Malone, Sections 91-104. Over the past six decades, with legislative approbation, compensation coverage has thus been broadly expanded, with modern-day characterization *692 as hazardous being so tenuous as not to be related to any actual undue risk of injury at work. Malone, Coverage — Hazardous Business, 33 La.L.Rev. 284-88 (1973).
Thus, for instance, because the 1914 legislation classified as hazardous the operation of an apparatus “charged with electrical current”, we held (consistently with past jurisprudence) that an employment was covered by the compensation act because the employee was regularly operating an electric cash register. Fontenot v. J. Weingarten, Inc., 259 La. 217, 249 So.2d 886 (1971). We held this resultóte be legislatively required, even though the inherent danger of injury while operating the device was slight.
Consistently with these interpretations, the legislative purposes of affording compensation protection to employees subject to undue risk of work-injury will, it seems to us, be served rather than violated by affording compensation coverage to employees in trades, businesses, or occupations which are, in fact, hazardous, even though not specifically enumerated as such by the 1914 legislature. The final paragraph of Section 1035 expressly so requires, and we so hold.
In determining to afford compensation to “hazardous” employments, broadly construed, the 1914 specific enumeration indicates an attempt to specify, as a minimum, those businesses, trades, or occupations and those employment characteristics which subjected employees to risks additional to those encountered in everyday non-employment life. For instance, in 1914 the ordinary office or store did not involve undue risk of accidental injury and was not intended to be covered.
Therefore, consistent with the legislative intent to afford compensation protection to employees subjected to such risk, any trade, business, or occupation must be classified as hazardous where the employees thereof are exposed to undue risk of accidental injury while performing duties of their employment — i. e., a risk incident to the employment appreciably greater than the risks attendant upon everyday living, a risk involving greater possibility of injury, or of receiving a more disabling injury, than in the average occupation.
(6)
The defendants alternatively contend that, even if the injured plaintiff’s employment is hazardous, then such decision cannot retroactively effect the present accident. This contention relies upon the final two sentences of the third paragraph of 1035, quoted in full in Footnote 3 above.
The practical application of these final two sentences is doubtful. See Malone, Section 92 at p. 105. So far as we can find, no reported case discusses the actual utilization of the procedure so authorized. The defendants, in effect, contend that the final two sentences of the third paragraph modify the first. If so interpreted, the third paragraph as a whole provides the only means for naming hazardous occupations or employments additional to those enumerated by the second paragraph, i. e., by agreement or by judicial adjudication, prospective only in effect. But, if one attempts to apply this meaning to practical situations, what are the practical consequences of such a construction?
. Under it, a disabled employee would be entitled to win a lawsuit to hold that, as between him and his (former) employer, his employment was hazardous as to any future accidents. He could not, however, win compensation for the disabling accident. It is unlikely that, if he won judgment, it would affect any future work-accidents — his own employment would hardly be continued, if he persisted in his suit; while judgment declaring the occupation to be hazardous would not be res judicata binding the employer as to suit by any other employee (who himself, if disabled, would be forced to pursue the same fruitless remedy).
*693 Likewise, if the employer and the employee desire to elect coverage under the compensation act, they need not specifically agree that the occupation be hazardous. Under La.R.S. 23:1036, they may elect such coverage, whether or not the occupation be hazardous or whether or not it be one of those specified by 1035. The provision for determination by agreement that an employment is hazardous thus likewise appears to have little purpose.
We do not believe the legislature intended so illogical and unlikely a construction. The correct interpretation need not be that the second and third sentences of the paragraph modify the first.
Rather, as suggested by the concurring opinion in Fontenot, the second and third sentences may be interpreted as setting forth an independent provision, rather than as modifying the first sentence.
Under this construction, the first sentence provides (as it unambiguously does) that “any” hazardous occupation “shall” be covered by workmen’s compensation, in addition to those hazardous businesses enumerated in the second paragraph. Independently, the second and third sentences provide that the “question” of whether a non-specified business is hazardous (or not) “may” be determined either by voluntary agreement or by adjudication.
The most practical contemplated application of this latter procedure, it would appear, will be to ascertain whether a business is non-hazardous (or not) before an accident at work occurs. The agreement that the employment is non-hazardous or a declaratory adjudication to such effect will not be retroactive, so as to divest the employee of any rights vested in him by a prior accident at work. Such a voluntary agreement or adjudication will not cause compensation payments previously made to be retroactively rescinded; nor can such a voluntary agreement retroactively deprive an employee of benefits to which he is entitled or provide a means to evade the requirement that post-accident lump-sum payment or compromise of compensation liability be made only subject to judicial scrutiny and judicial approval, see La.R.S. 23:1274.
That, despite a substantial defense based on prior adjudications, the defendant is now unexpectedly cast for compensation liability to an employee undoubtedly disabled while working for him, is a recurring situation throughout the long history of judicial interpretation which has expanded the concept of what is hazardous employment in the light of current conditions of society. As in the 1971 Fontenot decision, nevertheless the ruling is applicable to the work-injury in the hazardous employment, upon the court’s holding that the employment was hazardous at the time of injury, despite the employer’s argument that the ruling should be applied prospectively only. See e. g., Haddad v. Commercial Truck Co., 146 La. 897, 84 So. 197 (1920); Plick v. Toye Bros. Auto & Taxicab Co., 13 La.App. 525, 127 So. 59 (Orl.App.1930); Labostrie v. Weber, 15 La.App. 241, 130 So. 885 (Orl.App.1930).

Conclusion

We have previously found that in fact the occupation in which the plaintiff was injured is hazardous, as subjecting the employee to undue risk of injury. Therefore, the plaintiff is entitled to workmen’s compensation benefits arising under the act because of his work-injury.
Accordingly, for the reasons assigned, we reverse the judgment of the court of appeal dismissing the plaintiff’s suit, and we reinstate the judgment of the trial court awarding him compensation benefits against the defendants. All costs of these proceedings are taxed against the defendants-appellants.
*694 Court of Appeal judgment reversed; District Court judgment reinstated.
APPENDIX “A”
La.R.S. 23:1035: Employees in specified hazardous occupations; other hazards, judicial determination
[1] The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his employer’s trade, business, or occupation in the following hazardous trades, businesses and occupations:
[2] The operation, construction, repairs, removal, maintenance and demolition of railways and railroads, vessels, boats, and other water crafts, terminal docks, street railways, factories, mills, including rice mills, cotton oil mills, saw mills, shingle mills, planing mills and syrup mills, power laundries, power bakeries, foundaries, forges, smelters, blast furnaces, machine shops, coke burning plants, lime burning plants, bleaching works, dyeing works, potteries, phosphate and sulphur works, rendering works, slaughter houses, meat packing plants, ice plants, ware houses, marble or stone cutting or polishing plants, ship building and ship repairing plants and yards, mines, mining plants, quarries, oil, gas, sulphur, salt or other wells, heating plants, lighting plants, power plants, water works, pumping works, coal yards, lumber yards, building material yards, derricks, bridges, junk yards, malt houses, breweries, freight or passenger elevators, stock yards, harvesting machinery, threshing machine, cotton gins, cotton compresses, sugar houses, sugar and other refineries, sash and door factories, wood-working establishments, printing and photo-engraving establishments, book binding and general press work, skidders, engineering works. Rigging or coaling of vessels, or loading or unloading of cargoes of vessels, logging and lumbering, storing ice, paving with asphalt or other molten material, excavating or grading with power machinery, or with the use of an explosive, working in compressed air, dredging, pile driving, boring; moving safes, chimney sweeping. The construction, installation, operation, alteration, removal or repairs of wires, cables, switchboards or apparatus charged with electrical current. Work in any of the building or metal trades in the erection, construction, extension, decoration, alteration, repair or demolition of any building or structural appurtenances. Any occupation entailing the manufacture, transportation, care of, use. of, or regular proximity to dangerous quantities of gunpowder, dynamite, nitroglycerine and other like dangerous explosives. The installation, repair, erection, removal or operation of boilers, furnaces, engines and other forms of machinery.
[3] If there be or arise any hazardous trade, business or occupation or work other than those hereinabove enumerated, it shall come under the provisions of this Chapter. The question of whether or not a trade, business, or occupation not named herein is hazardous may be determined by agreement between the employer and employee or by submission at the instance of either to the court having jurisdiction over the employer in a civil case. The decision of the court shall not be retroactive in its effect.

. The limitation of Louisiana’s act to hazardous employments is typical of earlier compensation acts enacted in the early part of this century, when some legal thought supported the view that constitutional questions might otherwise arise. Now the great bulk of modern compensation legislation applies comprehensively to all employments. Malone, Section 91: Compendium on Workmen’s Compensation, 11-14, 16-18, 29, 194 (National Commission on State Workmen’s Compensation Laws, Government Printing Office, Washington, D.C.; 1973).

. The act also affords mandatory coverage to non-hazardous occupations in limited respects : public employees (La.R.S. 23 :1034) and private employers and employees who enter into voluntary agreements to such effect (La.R.S. 23:1036).

.The third paragraph of 1035 concludes: “ * * * The question of whether or not a trade, business, or occupation not named herein is hazardous may be determined by agreement between the employer and employee or by submission at the instance of either to the court having jurisdiction over the employer in a civil case. The decision of the court shall not be retroactive in its effect.”
As will be noted later, in their alternative argument the defendants contend that the determination that the veterinary hospital is hazardous cannot be applied retroactively to them.

. “If there be or arise any hazardous trade, business or occupation or work other than those hereinabove enumerated, it shall come under the provisions of this Chapter.” (Italics ours.)